UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ARCHIE JOHN MCCOY, and A. A., | CIV. NO. 21-00063 LEK-RT |
| Plaintiffs, | |
| vs. | |
| STATE OF HAWAII DEPARTMENT OF HUMAN SERVICE, CHILD WELFARE BRANCH, LENA KAKEHI, SOCIAL WORKER, LITA JYRING, SOCIAL WORKER, NATASHA GOMES, PAMELA NAKAELUA, DHS SUPERVISOR, DANA KANO, DHS SECTION ADMINISTRATOR, EPIC OHANA INC., and KATHY SHIMABUKURO, | |
| Defendants. | |

**ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

On May 10, 2021, Defendants State of Hawai`i Department of Human Service, Child Welfare Branch ("DHS"), Lena Kakehi ("Kakehi"), Lita Jyring ("Jyring"), and Pamela Nakanelua ("Nakanelua" and collectively "State Defendants") filed their Motion to Dismiss the Second Amended Complaint for Damages ("Motion"). [Dkt. no. 20.] On May 25, 2021, Plaintiffs Archie John McCoy ("McCoy") and A.A. ("Plaintiffs"), filed their memorandum in opposition to the Motion ("Memorandum in Opposition"). [Dkt. no. 24.] On June 2, 2021, Defendants Effective Planning & Innovative Communication, Inc., doing business as Epic `Ohana, Inc. ("Epic"), and Kathleen Shimabukuro

("Shimabukuro," and collectively "Epic Defendants") filed their statement of no position. [Dkt. no. 27.] On June 8, 2021, the State Defendants filed their reply to Plaintiffs' Memorandum in Opposition ("Reply"). [Dkt. no. 28.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawai`i ("Local Rules"). The State Defendants' Motion is granted in part and denied in part for the reasons set forth below.

## BACKGROUND

On January 25, 2021, Plaintiffs filed a complaint against the State Defendants, the Epic Defendants, and Defendants Natasha Gomes ("Gomes") and Dana Kano ("Kano" and all collectively "Defendants").[1] [Dkt. no. 1.] Plaintiffs filed their First Amended Complaint for Damages against Defendants on January 29, 2021. [Dkt. no. 6.] On March 25, 2021, Plaintiffs filed their Second Amended Complaint for Damages ("Second Amended Complaint"), which is the operative complaint here. [Dkt. no. 12.]

According to the Second Amended Complaint, on November 30, 2016, A.A. was born in Honolulu, Hawai`i at Kapiolani

---

[1] Gomes and Kano have not yet been served. See Minutes - EP: Telephonic Rule 16 Scheduling Conference, filed 7/28/21 (dkt. no. 32), at 1.

2

Medical Center.  Plaintiffs allege that, after A.A.'s birth,
A.A.'s mother, Arseny Aliwis ("Aliwis"),[2] informed medical staff
that she wanted A.A. to be placed in foster custody.  [Second
Amended Complaint at ¶¶ 16, 23.]  According to Plaintiffs,
Aliwis made the request because she believed A.A.'s biological
father was another man, whom she had an affair with, and she did
not know how to explain the affair to McCoy.  McCoy allegedly
did not know that Aliwis was pregnant with A.A. because she
spent most of the pregnancy in Chuuk, Micronesia, and she hid
her pregnancy upon her return to Hawai`i.  Plaintiffs further
allege that, once Aliwis made the request, a Kapiolani Medical
Center social worker told her that, if she claimed domestic
abuse, then the State of Hawai`i ("the State") would take care
of the baby.  The mother allegedly followed the social worker's
advice and fabricated a story that she experienced domestic
abuse.  [Id. at ¶¶ 21-23.]  Plaintiffs also allege Aliwis told
the social worker the man with whom she had an affair with while
in Chuuk was A.A.'s father, and she lived with her sister, not
her boyfriend.  [Id. at ¶ 24.]  It appears from the Second
Amended Complaint that Aliwis did not disclose any specific

---

[2] At the time of A.A.'s birth, McCoy was Aliwis's live-in-
boyfriend.  [Second Amended Complaint ¶ 23.]  In addition to
A.A., they have three other children together.  [Id. at ¶ 2.]

information regarding McCoy to social workers or medical staff during these early events.  See, e.g., id. at ¶¶ 23, 94.

Plaintiffs allege that, on December 2, 2016, Jyring, a DHS social worker, talked with a resource caregiver over the telephone, and after the call, the resource caregiver took A.A. from Aliwis and placed him into foster custody.  At the time A.A. was removed from Aliwis, she was allegedly nursing and caring for him.  [Id. at ¶ 25.]  Aliwis was discharged from the hospital later that day.  [Id. at ¶ 33.]  Plaintiffs claim that, on December 6, 2016, Jyring met with Aliwis and informed her of a scheduled court date for December 9, 2016.  On the same day as the meeting with Aliwis, Jyring allegedly prepared and signed, under the penalty of perjury, a Safe Family Home Report ("the Family Report") and a Petition for Temporary Foster Custody ("the Petition").  [Id. at ¶ 28.]

On December 9, 2016, and before the State of Hawai`i Family Court of the First Circuit ("the family court") hearing on the Petition, Aliwis allegedly informed a DHS social worker that she had changed her mind and did not want to relinquish custody of A.A.  Plaintiffs allege Aliwis's statement was not reported to the family court during the hearing.  The family court awarded temporary custody of A.A. to DHS.  [Id. at ¶¶ 30-31.]  The Petition allegedly contained false statements, such as "'Mother lacks appropriate parenting skills'," and "'Child is

4

openly abandoned. . .  Mother has abandoned him'."  [Id. at ¶ 31 (alteration in original).]

Plaintiffs further allege DHS failed to investigate or corroborate the domestic violence accusations, as they were mandated to do, which led to A.A.'s placement in foster custody. [Id. at ¶ 34.]  On March 2, 2017, the family court conducted a hearing where it granted the DHS's motion requesting authorization to serve the unknown biological father via publication.  [Id. at ¶ 47.]  According to Plaintiffs, the motion was based on the affirmation that Epic had completed an "unremarkable Family Search" that Jyring and Gomes, a DHS supervisor, included in a report to the family court.[3]  [Id.] Plaintiffs claim Epic did not present to the family court any affidavits or declarations detailing the efforts taken to locate A.A.'s biological father.  [Id. at ¶ 48.]  They additionally allege that there is no evidence of "any reasonable, or diligently competent attempts" by DHS to identify and locate the unknown father prior to the request for service by publication. [Id. at ¶ 49.]

---

[3] Plaintiffs claim that Epic has, or had, "a contract to perform investigation duties to locate missing, absent and unknown fathers in paternity cases involving the DHS in 2016." [Second Amended Complaint at ¶ 88.]

On February 21, 2018, DHS filed a motion to terminate the parental rights of Aliwis and the unknown biological father. The family court terminated parental rights on February 27, 2018, in part because both parents defaulted by not attending the hearing.  The family court granted permanent custody of A.A. to DHS.  [Id. at ¶¶ 57-59.]

Around April 18, 2018, Aliwis allegedly informed McCoy for the first time that he could be A.A.'s father,[4] and he immediately attempted to contact the hospital and DHS.  On May 31, 2018, McCoy and Aliwis went to DHS's office to speak with Kakehi, another DHS social worker.  Plaintiffs allege that, from May 2018 to October 2018, McCoy went to the DHS office every three to four weeks to meet with Kakehi.  Kakehi was allegedly unavailable every time, and she never contacted McCoy after his attempts to see her.  McCoy claims he first visited A.A. on June 23, 2018.[5]  McCoy alleges that, from June 23, 2018 to October 9, 2018, he visited A.A. almost every weekend.  [Id. at ¶¶ 41-44.]

---

[4] Plaintiffs allege that, although Aliwis told McCoy about A.A.'s birth two weeks afterward, [id. at ¶ 39,] McCoy did not know that A.A. could be his child until April 2018, see id. at ¶ 41.  Aliwis allegedly told McCoy that the child's biological father was the man with whom she had an affair with.  [Id. at ¶ 39.]

[5] McCoy would visit Aliwis's sister, who was allegedly caring for A.A. on the weekends during this time.  [Second Amended Complaint at ¶ 44.]

On October 16, 2018, McCoy met with Kakehi, where he reported his belief that he could be A.A.'s biological father. During the meeting, McCoy allegedly learned about the domestic violence accusations.  McCoy denied the allegations, and Kakehi advised McCoy to hire an attorney.  [Id. at ¶ 45.]  On November 5, 2018, McCoy filed a paternity case.  On December 6, 2018, the family court took judicial notice of McCoy's paternity case and ordered McCoy to undergo a genetic test to establish whether he was A.A.'s biological father.  [Id. at ¶ 60.]  Plaintiffs allege that, on February 22, 2019, the court in the paternity case adjudicated McCoy as A.A.'s "natural father," and, on March 25, 2019, the family court acknowledged McCoy as A.A.'s "'natural father/legal father.'"  [Id. at ¶ 62.]  On June 5, 2019, McCoy filed a motion to set aside the default judgment granting custody of A.A. to DHS.  [Id. at ¶ 67.]  According to the Second Amended Complaint, DHS stated in its written closing argument that it "support[ed] Father's Motion to Set Aside Default and Motion to Intervene . . . ."  [Id. at ¶ 84 (emphasis omitted).]  On November 19, 2019, however, McCoy's motion "to enforce and exercise his paternal rights" was denied.  [Id. at ¶ 1.]  The Second Amended Complaint states McCoy has not seen A.A. since October 9, 2018 because DHS stopped A.A.'s visits with Aliwis's sister.  [Id. at ¶ 46.]

Plaintiffs allege the following claims: (1) negligence against all Defendants for failing to diligently search for A.A.'s biological father ("Count I"); [id. at ¶¶ 97–105;] (2) intentional or negligent infliction of emotional distress ("IIED" or "NIED") against all Defendants for failing to (a) investigate the allegations of domestic abuse and (b) diligently search for A.A.'s biological father ("Count II"); [id. at ¶¶ 106–09;] (3) a 42 U.S.C. § 1983 claim against all Defendants, alleging violations of the Fourth and Fourteenth Amendment of the United States Constitution's right to due process against Defendants for deliberate presentation of false or perjured evidence and/or suppression of exculpatory evidence ("Count III"); [id. at ¶¶ 110–27;] (4) a § 1983 claim against DHS, alleging violations of the Fourth and Fourteenth Amendments arising from an unwarranted physical medical examination that A.A. received while at Kapiolani Medical Center ("Count IV"); [id. at ¶¶ 128–29;] (5) a § 1983 claim against the State Defendants, alleging violations of the Fourth and Fourteenth Amendments arising from the unwarranted seizure of A.A. ("Count V"); [id. at ¶¶ 130–43;] (6) a § 1983 claim, brought against all Defendants pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), alleging violations of the Fourth and Fourteenth Amendments arising from unconstitutional custom, policy, practice, and/or training ("Count VI"); [id. at

¶¶ 144-59;] and (7) a <u>Monell</u> claim against all Defendants, alleging breach of mandatory duties because of their failure to (a) investigate the domestic abuse allegations and (b) investigate and perform a reasonably competent search for A.A.'s biological father ("Count VII"), [<u>id.</u> at ¶¶ 160-64].

The State Defendants now move to dismiss with prejudice Plaintiffs' claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**STANDARD**

**I.   Federal Rule of Civil Procedure 12(b)(1)**

Rule 12(b)(1) authorizes a defendant to move for dismissal of an action for "lack of subject-matter jurisdiction[.]"  "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." <u>Robinson v. United States</u>, 586. F.3d 683, 685 (9th Cir. 2009) (citation and quotation marks omitted).  This Court has stated:

> A Rule 12(b)(1) motion may be either facial (attacking the sufficiency of the complaint's allegations to invoke federal jurisdiction) or factual (disputing the truth of the allegations of the complaint).  <u>Safe Air for Everyone [v. Meyer]</u>, 373 F.3d [1035,] 1039 [(9th Cir. 2004)].
>
> In a facial attack, the court may dismiss a complaint when its allegations are insufficient to confer subject matter jurisdiction, and a complaint's factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996).  But in a factual attack

9

> "[w]here the jurisdictional issue is separable
> from the merits of the case, the judge may
> consider the evidence presented with respect to
> the jurisdictional issue and rule on that issue,
> resolving factual disputes if necessary." 
> Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs.
> Corp., 594 F.2d 730, 733 (9th Cir. 1979).   In
> such case, "no presumptive truthfulness attaches
> to plaintiff's allegations, and the existence of
> disputed material facts will not preclude the
> trial court from evaluating for itself" the
> existence of subject matter jurisdiction.   Id.

Bishop v. United States, Civ. No. 16-00248 JMS-KSC, 2017 WL

1381653, at *7 (D. Hawai`i Apr. 13, 2017) (some alternations in

Bishop).

## II.   __Federal Rule of Civil Procedure 12(b)(6)__

The Ninth Circuit has described the standard

applicable to a motion under Rule 12(b)(6) as follows:

> To survive a motion to dismiss for failure
> to state a claim after the Supreme Court's
> decisions in Ashcroft v. Iqbal, 556 U.S. 662, 129
> S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and Bell
> Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.
> Ct. 1955, 167 L. Ed. 2d 929 (2007), the
> [plaintiff's] factual allegations "must . . .
> suggest that the claim has at least a plausible
> chance of success."   In re Century Aluminum [Co.
> Sec. Litig.], 729 F.3d [1104,] 1107 [(9th Cir.
> 2013)].   In other words, their complaint "must
> allege 'factual content that allows the court to
> draw the reasonable inference that the defendant
> is liable for the misconduct alleged.'"   Id.
> (quoting Iqbal, 556 U.S. at 678, 129 S. Ct.
> 1937).

> Following Iqbal and Twombly, . . . we have
> settled on a two-step process for evaluating
> pleadings:

> First, to be entitled to the presumption of
> truth, allegations in a complaint or
> counterclaim may not simply recite the
> elements of a cause of action, but must
> contain sufficient allegations of underlying
> facts to give fair notice and to enable the
> opposing party to defend itself effectively.
> Second, the factual allegations that are
> taken as true must plausibly suggest an
> entitlement to relief, such that it is not
> unfair to require the opposing party to be
> subjected to the expense of discovery and
> continued litigation.
>
> [Eclectic Props. E., LLC v. Marcus & Millichap
> Co., 751 F.3d 990, 996 (9th Cir. 2014)] (quoting
> Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.
> 2011)).  In all cases, evaluating a complaint's
> plausibility is a "context-specific" endeavor
> that requires courts to "draw on . . . judicial
> experience and common sense."  Id. at 995-96
> (internal quotation marks omitted).

Levitt v. Yelp! Inc., 765 F.3d 1123, 1134-35 (9th Cir. 2014)

(some alterations in Levitt).

This Court is not required to accept as true

"[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements."  Iqbal, 556 U.S. at

678 (citing Twombly, 550 U.S. at 555).  Also, this district

court has stated that, "although allegations 'upon information

and belief' may state a claim after Iqbal and Twombly, a claim

must still be based on factual content that makes liability

plausible, and not be 'formulaic recitations of the elements of

a cause of action.'"  Klohs v. Wells Fargo Bank, N.A., 901 F.

Supp. 2d 1253, 1259 n.2 (D. Hawai`i 2012) (quoting Long v.

Yomes, 2011 WL 4412847, at *4 (D. Hawai`i Sept. 20, 2011)

(quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955) (editorial

mark omitted)).

## DISCUSSION

The State Defendants seek dismissal on the following

grounds: (1) the Eleventh Amendment of the United States

Constitution bars Plaintiffs from asserting any claims against

DHS, including the § 1983 claims ; (2) Plaintiffs' Monell

claims, (*i.e.*, Counts VI and VII), cannot be brought against a

state government official in the official's personal capacity;

(3) Plaintiffs' § 1983 claims (*i.e.*, Causes of Action III and

IV), cannot be brought against a DHS supervisor under a theory

of *respondeat superior*; (4) Plaintiffs' state law tort claims

alleging negligence, IIED, and NIED, (*i.e.*, Counts I and II),

cannot be brought against the individual State Defendants

because they have statutory immunity, pursuant to Haw. Rev.

Stat. § 360-3; and (5) Plaintiffs' claim for the violation of

A.A.'s Fourth Amendment rights, (*i.e.*, Count V), is

impermissible.  [Mem. in Supp. of Motion at 1-2.]

## I.   Next Friend Standing

Before addressing the substantive issues in this case,

the Court must note the issues raised regarding McCoy's standing

to bring claims for, or on behalf of, A.A.  In the Motion, the

State Defendants argue McCoy "has no standing to assert a

12

violation of A.A.'s Fourth Amendment rights" because: (1) Fourth Amendment rights are personal and, therefore, cannot be alleged vicariously; and (2) to the extent that A.A. is asserting his own Fourth Amendment rights, McCoy does not have standing under Federal Rule of Civil Procedure 17 to represent A.A.  [Id. at 18-19 & n.3.]  McCoy claims he is authorized to assert causes of action belonging to A.A. as a "next friend."  See Second Amended Complaint at ¶ 1; Mem. in Opp. at 23-24.

>    Federal Rule of Civil Procedure 17(c)(2) states:
>
>    A minor or an incompetent person who does not
>    have a duly appointed representative may sue by a
>    next friend or by a guardian ad litem.  The court
>    must appoint a guardian ad litem — or issue
>    another appropriate order — to protect a minor or
>    incompetent person who is unrepresented in an
>    action.

"Fed. R. Civ. P. 17(c) requires a court to take whatever measures it deems proper to protect an incompetent person[, such as a minor,] during litigation."  United States v. 30.64 Acres of Land, 795 F.2d 796, 805 (9th Cir. 1986).  "Although the court has broad discretion and need not appoint a guardian ad litem if it determines the person is or can be adequately protected, it is under a legal obligation to consider whether the person is adequately protected."  Id. (citation omitted).  A district court "may not use [Rule 17] as a vehicle for dismissing claims [with prejudice] or for allowing the interests of an incompetent

litigant to go completely unprotected." Davis v. Walker, 745
F.3d 1303, 1310 (9th Cir. 2014) (citation omitted).

> In order to establish next-friend standing, the
> putative next friend must show: (1) that the
> [plaintiff] is unable to litigate his own cause
> due to mental incapacity, lack of access to
> court, or other similar disability; and (2) the
> next friend has some significant relationship
> with, and is truly dedicated to the best
> interests of, the [plaintiff].

Coal. of Clergy v. Bush, 310 F.3d 1153, 1159–60 (9th Cir. 2002)
(citation omitted)). But, even "the lack of a next friend does
not destroy an incompetent party's standing." Naruto v. Slater,
888 F.3d 418, 423 (9th Cir. 2018) (citation omitted).

Here, A.A. is unable to litigate his own cause because
he is a minor. The question, then, is whether McCoy meets the
second prong in the Bush inquiry. The Second Amended Complaint
alleges McCoy is A.A.'s biological father, but does not have
custody of A.A. See Second Amended Complaint at ¶ 1. He also
has not seen A.A. since October 9, 2018. [Id. at ¶ 46.]
However, McCoy "is trying to gain legal and physical custody of
his son," and "has a pending case before the Hawaii Supreme
Court." [Mem. in Opp. at 24.] The determination whether McCoy
can act as A.A.'s next friend in this case or whether a guardian
ad litem or a different next friend is necessary requires a more
developed record and is not appropriate in the context of a
motion to dismiss. Given the complexities of A.A. and McCoy's

14

relationship, A.A.'s interests would be better protected if a formal motion is submitted to the Court addressing this issue. Thus, any claims here asserted for, or on behalf of, A.A. are dismissed without prejudice.  If Plaintiffs would like to move forward with A.A.'s claims, Plaintiffs should file an appropriate motion to have a next friend, whether McCoy or otherwise, appointed for A.A. in this case.  The remainder of this Order will only address the claims asserted by McCoy.

## II.  **Claims Against DHS**

### A.  **Eleventh Amendment and Sovereign Immunity**

The State Defendants argue that all of the claims alleged against DHS should be dismissed because it is a state agency that is protected by sovereign immunity.  [Mem. in Supp. of Motion at 9.]  McCoy contends that sovereign immunity does not apply to DHS because "'[t]he Eleventh Amendment and the principle of state sovereignty which it embodies . . . are necessarily limited, by the enforcement provisions of Section 5 of the Fourteenth Amendment.'"  [Mem. in Opp. at 3 (alteration in Mem. in Opp.) (quoting Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976)).]  The State Defendants respond that "[t]he Fourteenth Amendment does not, by itself, provide for suits against states or state officials."  [Reply at 4.]

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals

15

in federal court." Bd. of Trs. of Univ. of Ala. v. Garrett, 531

U.S. 356, 363 (2001) (citation omitted).  "It is well

established that agencies of the state are immune under the

Eleventh Amendment from private damages . . . in federal court."

Sato v. Orange Cnty. Dep't of Educ., 861 F.3d 923, 928 (9th Cir.

2017) (citation and quotation marks omitted); see also P.R.

Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139,

144 (1993) ("Absent waiver, neither a State nor agencies acting

under its control may be subject to suit in federal court."

(citations and internal quotation marks omitted)).  As such,

"[s]tates, their agencies, and their officials in their official

capacities are immune from damage suits under state or federal

law by private parties in federal court unless there is a valid

abrogation of that immunity or an unequivocal express waiver by

the state."  Monet v. Hawai`i, Civ. No. 11-00211 SOM/RLP, 2011

WL 2446310, at *4 (D. Hawai`i June 14, 2011) (some citations

omitted) (citing Sossamon v. Tex., 131 S. Ct. 1651, 1658

(2011)).  "A state generally waives its immunity when it

voluntarily invokes [federal] jurisdiction or . . . makes a

'clear declaration' that it intends to submit itself to

[federal] jurisdiction."  In re Bliemeister, 296 F.3d 858, 861

(9th Cir. 2002) (alterations in Bliemeister) (citation and

internal quotation marks omitted).  "Express waiver is not

required; a state waives its Eleventh Amendment immunity by

conduct that is incompatible with an intent to preserve that immunity." Id. (brackets, citation, and internal quotation marks omitted).

In Fitzpatrick, the United States Supreme Court held that "Congress may, in determining what is 'appropriate legislation' for the purposes of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts." 427 U.S. at 456 (citations omitted). Thus, the Fourteenth Amendment does not provide for private suits against States or state officials by itself. McCoy even concedes that "[s]uch abrogation requires an 'unequivocal expression' of Congressional intent." [Mem. in Opp. at 4 (citations omitted).] Yet, he fails to cite to any unequivocal expression made by Congress that shows its intent to abrogate DHS's sovereign immunity. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996) ("Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement." (citation and internal quotation marks omitted)).

McCoy further argues DHS waived sovereign immunity by implication because DHS accepted federal funds under the Fostering Connections to Success and Increasing Adoptions Act ("the Act"). [Mem. in Opp. at 7.] The Act amended parts of 42

17

U.S.C. § 671 to, among other things, "improve outcomes for children in foster care."  Fostering Connections to Success and Increasing Adoptions Act of 2008, Pub. L. No. 110-351, 122 Stat. 3949, 3949.  A State or state agency's acceptance of federal funds does not, in of itself, waive its sovereign immunity.  See Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("The mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts."); Sossamon, 563 U.S. at 290 ("[An] implied-contract-remedies proposal cannot be squared with our longstanding rule that a waiver of sovereign immunity must be expressly and unequivocally stated in **the text of the relevant statute**." (emphasis added)).  Here, McCoy does not provide any language in the Act that expressly and unequivocally waives sovereign immunity.  He, therefore, fails to plead a plausible claim that DHS's sovereign immunity is waived.  See Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Twombly, 550 U.S. at 570)).  Counts I and II are therefore dismissed as to DHS.  To the extent that Counts I and II invoke Section 5 of the Fourteenth Amendment or the Act as the basis for an alleged waiver of

sovereign immunity, the dismissal is with prejudice because those claims cannot be saved by amendment.  See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." (citation and quotation marks omitted)).

### B.   Section 1983 Claims Against DHS

The State Defendants argue § 1983 does not apply to DHS because it "is an agency of the State."  [Mem. in Supp. of Motion at 11.]  McCoy claims that § 1983 applies to DHS because "its policies, customs, and/or usages are the moving force behind the Plaintiff[s'] constitutional injury."  [Mem. in Opp. at 9 (citing Monell v. Department of Social Services (1978) 436 U.S. 658, 694).]

42 U.S.C. § 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

The Supreme Court "has construed the word 'person' in § 1983 to exclude States, neither a federal court nor a state court may entertain a § 1983 against such a defendant."  Howlett v. Rose, 496 U.S. 356, 376 (1990).  Further, courts in this district have

ruled that a State agency, such as the Department of Public Safety, is not a "person" under § 1983, and that such claims fail "as a matter of law."  See Pauline v. State of Hawai`i Dept. of Pub. Safety, 773 F. Supp. 2d 914, 922 (D. Hawai`i 2011).  So too here.  DHS, as a state agency, is not a "person" under § 1983.  See Robinson v. Tripler Army Med. Ctr., CIV. NO. 04-00672 HG-KSC, 2005 WL 8158959, at *3 (D. Hawai`i June 24, 2005) (stating DHS "is not a person" under § 1983), *aff'd*, No. 05-17011, 2009 WL 688922, at *2 (9th Cir. Mar. 17, 2009).  As a matter of law, McCoy cannot assert a § 1983 claim against DHS.[6]  McCoy fails to allege plausible § 1983 claims against DHS and, thus, Counts III, IV, V, VI, and VII are dismissed.  Because it is clear that McCoy's § 1983 claims against DHS cannot be saved by amendment, the dismissal is with prejudice.

## III. Section 1983 Claims Against the State Employee Defendants

"Traditionally, the requirements for relief under section 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting

---

[6] "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (citations and internal quotation makes omitted).  Here, however, this rule does not apply because only damages are sought.

under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991) (citations omitted).  Additionally, a defendant "cannot be held liable for a constitutional violation under 42 U.S.C. § 1983 unless they were integral participants in the unlawful conduct." Keates v. Koile, 883 F.3d 1228, 1241 (9th Cir. 2018) (citation omitted); see also Park v. City & Cnty. of Honolulu, 292 F. Supp. 3d 1080, 1090 (D. Hawai`i 2018) ("For an individual capacity suit under Section 1983, plaintiff must allege personal participation in the constitutional violation on the part of the individual to subject that person to individual liability." (citation omitted)).

The State Defendants argue that Jyring, Kakehi, and Nakanelua (collectively "State Employee Defendants") are not liable under Monell because such claims "may not be brought against a government official in that official's personal capacity."  [Mem. in Supp. of Motion at 13.]  McCoy asserts the State Employee Defendants are liable because § 1983 "provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the Constitution."  [Mem. in Opp. at 15 (citations omitted).]

A.   **Individual Capacity Liability**

"The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity." Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir.

21

2016) (citing Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam)).  "It does not, however, bar claims for damages against state officials in their **personal** capacities."  Id. (emphasis in original) (citation omitted); see also Hafer v. Melo, 502 U.S. 21, 31 (1991) ("[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.").

McCoy is suing the State Employee Defendants in their personal capacities.  See Second Amended Complaint at ¶¶ 4, 6, 8.  The State Defendants contend that "'Monell does not concern liability of individuals acting under color of state law.'" [Mem. in Supp. of Motion at 12 (quoting Guillory v. County of Orange, 731 F.2d 1379, 1382 (9th Cir. 1984)).]  But, the State Defendants fail to provide the full context of that quote.  The Ninth Circuit in Guillory stated:

> The dismissal of the individual defendants came in the same minute order that dismissed the governmental entities.  The court's citation to Monell cannot serve to explain the reasons for the dismissal of the individual defendants. Monell does not concern liability of individuals acting under color of state law.

731 F.2d at 1382.  The Ninth Circuit meant that, because Monell did not decide the question of whether § 1983 created liability for individuals, the district court incorrectly cited to the case in dismissing the individual defendants from the suit.  In fact, the Ninth Circuit held that the plaintiff's allegations

22

were "sufficient to give rise to a cause of action under the Civil Rights Act against the[] **individual defendants**."  Id. (emphasis added) (citation omitted).  A state official may be sued under § 1983 in their individual capacity.  See Mitchell, 818 F.3d at 442; Hafer, 502 U.S. at 31.  Thus, as a matter of law, McCoy can bring § 1983 claims against the State Employee Defendants in their individual capacities.[7]  The Court next turns to the issue of whether McCoy sufficiently alleges the State Employee Defendants are liable under § 1983.

**B.**   **Deprivation of a Constitutional or Statutory Right**

"'The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right "secured by the Constitution and laws."'"  Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1145 (9th Cir. 2021) (quoting Baker v. McCollan, 443 U.S. 137, 140, 99 S. Ct. 2689, 61 L.Ed.2d 433 (1979)).  The Court addresses McCoy's allegations for judicial deception

---

[7] The State Defendants argue McCoy failed to respond to the arguments regarding the Monell liability of the State Employee Defendants and, therefore, McCoy waived his argument in opposition.  [Reply at 9.]  Although it does seem that McCoy "copied and pasted directly from the Ninth Circuit Court of Appeals' Section 1983 Outline" in some areas, see id., he provides sufficient argument that, as a matter of law, the State Employee Defendants can be held individually liable under § 1983, see Mem. in Opp. at 12–17.

(Count III), unwarranted seizure (Count V), and violations of
mandatory duties (Count VII).[8]

### 1.   **Judicial Deception**

The Second Amended Complaint alleges McCoy's due
process rights were violated when Jyring deliberately omitted
information from, or falsified, the Petition submitted to the
family court.[9]  See, e.g., Second Amended Complaint at ¶¶ 31,
112, 115, 126, 142.  As an initial matter, because McCoy is
alleging judicial deception, (i.e., fraud), he must satisfy the
heightened pleading standard of Federal Rule of Civil Procedure
9(b).  See Benavidez, 993 F.3d at 1148-49 (reviewing claims
alleging judicial deception under Fed. R. Civ. P. 9(b)'s
heightened pleading standard).  Under Rule 9(b), a plaintiff
"must state with particularity the circumstances constituting

---

[8] The Court does not address the unwarranted medical
examination claims (Count IV), which is only alleged against
DHS, or the portion of the unconstitutional custom, policy,
practice, or training claim (Count VI) alleged against DHS, see
Second Amended Complaint at ¶¶ 128-29, 144-59, because DHS has
sovereign immunity.  See supra Discussion Section II.B.  To the
extent that Count VI is alleged against the State Employee
Defendants in their personal capacities, the Court does not
address those claims because they are improper.  The theory of
an unconstitutional custom, policy, practice, or training is
used to establish municipal liability, not personal liability.
See Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992)
(listing the three ways a plaintiff may establish municipal
liability).

[9] The State Defendants' Motion does not address any of
McCoy's substantive claims of constitutional violations.

fraud." "Particularity includes the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." Benavidez, 993 F.3d at 1145 (brackets, citation, and internal quotation marks omitted).

A parent has a "constitutional right under the Due Process Clause of the Fourteenth Amendment to be free from judicial deception and fabrication of evidence in the context of civil child custody cases." Id. at 1146 (citations omitted). "To successfully allege a violation of the constitutional right to be free from judicial deception, the [plaintiff] must make out a claim that includes (1) a misrepresentation or omission (2) made deliberately or with reckless disregard for the truth, that was (3) material to the judicial decision." Id. at 1147 (citation omitted).

McCoy's factual allegations, which are taken to be true for purposes of a motion to dismiss, see Iqbal, 556 U.S. at 678, attempt to address the three elements. First, McCoy claims misrepresentations were made when Jyring stated falsehoods in the Petition filed with the family court regarding Aliwis's ability to care for A.A., Jyring's efforts to locate A.A.'s father, and Jyring's investigation of the domestic violence allegations. See Second Amended Complaint at ¶¶ 31, 112, 115, 126, 142. Second, McCoy alleges Jyring deliberately included

25

false and perjured evidence in the Petition, such as the failure
to update Aliwis's intention to keep A.A. and the misstatements
about Aliwis's parenting skills.  See id. at ¶¶ 30-31, 112, 115-
16, 126.  Third, McCoy alleges the misrepresentations were
material because they assert that, "[h]ad it not been for
Defendants' deliberate false statements and/or omissions of
exculpatory material in the Safe Family Home Report and [the
Petition] . . . the Family Court would not have adopted
Defendants' recommended findings and [A.A.'s] continued and
prolonged detention would not have occurred."  See id. at ¶ 126.

McCoy, however, only sufficiently alleges a plausible
claim of judicial deception against Jyring.  The Second Amended
Complaint claims Jyring made the deliberate misrepresentations
or omissions.  See id. at ¶ 31.  Further, Jyring's statement
that Aliwis "abandoned" A.A., [id.,] conflicts with Aliwis's
alleged statement on the day of the family court hearing that
she "did not want to give up her son," and "had originally only
wanted to put him in temporary foster custody until she got
settled," [id. at ¶ 30].  Jyring never reported the statement to
the family court.  [Id. at ¶ 31.]  Particularly important is the
allegation that Aliwis informed Jyring that she wanted to retain
custody of A.A., and Jyring failed to update the Petition or
raise the issue with the family court.  Although Jyring drafted
the Petition after she met with Aliwis, McCoy has pled

sufficient facts to plausibly allege that she acted with at least reckless disregard for the truth by not changing the Petition to reflect Aliwis's statement before the family court. See Newt v. Kasper, 85 F. App'x 37, 38 (9th Cir. 2003) ("An affidavit containing 'deliberate or reckless **omissions** of facts that tend to mislead[,]' recklessly disregards the truth." (emphasis in Newt) (quoting United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985)). McCoy states that had Jyring not omitted Aliwis's statement, the family court would have decided differently. See Second Amended Complaint at ¶ 126. The allegations "create[] a plausible inference that the [family] court could not have made the findings . . . without the [omission]." See Benavidez, 993 F.3d at 1148. Thus, the materiality of the omission is plausibly alleged.

Finally, McCoy alleges "Jyring was acting under color of law" and "was acting within the course and scope of her duties as an employee and/or agent of [DHS]." [Second Amended Complaint at ¶ 4.] McCoy plausibly alleges Jyring was acting under color of law when she omitted Aliwis's statement and submitted the Petition to the family court without updating it because he claims Jyring was acting in her official capacity and exercising her responsibilities as a social worker. See McDade v. West, 223 F.3d 1135, 1140 (9th Cir. 2000) ("[G]enerally, a public employee acts under color of state law while acting in

27

his official capacity or while exercising his responsibilities pursuant to state law." (quoting West v. Atkins, 487 U.S. 42, 49–50, 108 S. Ct. 2250 (1988))). McCoy, therefore, adequately alleges a plausible judicial deception claim against Jyring.

Accordingly, the portion of Count III alleged against Jyring survives dismissal. It is not plausible, based on the alleged facts, that any of the other State Employee Defendants were "integral participants" in the alleged judicial deception because McCoy only describes Jyring's conduct in relation to the claim. See Keates, 883 F.3d at 1241. Thus, to the extent that McCoy asserts judicial deception claims against the other State Employee Defendants, he fails to allege plausible judicial deception claims. The portion of Count III alleged against the State Employee Defendants other than Jyring, is dismissed without prejudice because amendment may cure the deficiencies in the claim.

### ii. **Unwarranted Seizure**

Before assessing the sufficiency of the allegations, the Court notes that McCoy's claim here "should properly be assessed under the Fourteenth Amendment standard for interference with the right to family association." See Wallis v. Spencer, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000) (citations omitted). Because the claims asserted for, or on behalf of, A.A. have been dismissed without prejudice, the Court does not

address A.A.'s claim for unwarranted seizure.  See *supra*
Discussion Section I.

        "[T]he interest of parents in the care, custody, and
control of their children[] is perhaps the oldest of the
fundamental liberty interests recognized by [the Supreme]
Court."  Troxel v. Granville, 530 U.S. 57, 65 (2000).  The Ninth
Circuit has stated:

> [O]ur case law clearly establishes that the
> rights of parents and children to familial
> association under the Fourteenth, First, and
> Fourth Amendment are violated if a state official
> removes children from their parents without their
> consent, and without a court order, unless
> information at the time of the seizure, after
> reasonable investigation, establishes reasonable
> cause to believe that the child is in imminent
> danger of serious bodily injury, and the scope,
> degree, and duration of the intrusion are
> reasonably necessary to avert the specific injury
> at issue.

Keates, 883 F.3d at 1237–38.  "The existence of reasonable
cause, the sufficiency of an investigation, and the scope of an
intrusion are questions of fact."  Santor v. Harwell, Case
No. 1:19-CV-1593 AWI SKO, 2020 WL 5017616, at *4 (E.D. Cal.
Aug. 25, 2020) (citing Wallis, 202 F.3d at 1138—40).

        McCoy alleges "[n]o [DHS] Social Worker visited Arseny
Aliwis at Kapiolani hospital or asked and obtained her
permission before seizing [A.A.] two days after birth."  [Second
Amended Complaint at ¶ 31.]  McCoy also claims a warrant was not
issued before A.A. was removed from his mother, "even though he

was safe in Kapiolani Hospital and mother was nursing him and caring for him." [Id. at ¶ 25.] He alleges neither DHS nor the State Employee Defendants had "any specific and articulatable facts to show that A.A. was in imminent harm or immediate danger before they seized him[.]" [Id. at ¶ 36.] However, the allegations are clear that Aliwis initially wanted A.A. to be placed in foster care. [Id. at ¶ 23.] McCoy alleges Aliwis revoked her consent on the morning of the Petition hearing. See id. at ¶ 30.

Under Haw. Rev. Stat. § 571-61(a), a parent may relinquish parental rights through a verified petition, provided that,

> in respect to a legal parent or parents until the petitioner or petitioners have filed in the termination proceeding a written reaffirmation of their desires as expressed in the petition or in respect to a legal parent or parents until the petitioner or petitioners have been given not less than ten days' notice of a proposal for the entry of judgment and an opportunity to be heard in connection with such proposal.

Although McCoy alleges Aliwis informed Jyring that she wanted to retain custody, it is unclear if Aliwis was at the hearing. McCoy also does not allege clear facts as to whether the Petition was filed on Aliwis's behalf as a voluntary relinquishment or on behalf of DHS as an involuntary relinquishment. If the Petition was for involuntary relinquishment, then she apparently consented to DHS seizing

A.A. because she told the hospital social worker that she wanted to relinquish custody.  In that instance, McCoy's position that DHS needed a warrant would be misplaced.  See Keates, 883 F.3d at 1237-38 (explaining a warrant is needed "if a state official removes children from their parents **without their consent**" (emphasis added)).  In any event, McCoy's factual allegations are insufficient to state a plausible claim that the State Employee Defendants violated McCoy's right to family association.  Accordingly, McCoy's claims under Count V are dismissed.  Because McCoy may be able plead additional factual allegations that would cure the deficiencies in the claim, Count V, as alleged against the State Employee Defendants, is dismissed without prejudice.

### 3.   Breach of Mandatory Duties

McCoy alleges the State Defendants "breached their mandatory duties."  [Second Amended Complaint at ¶ 163.]  This claim repeats many of the same factual allegations that form the basis for the other claims.  McCoy neither states what statutes or regulations govern these mandatory duties nor provides what specific duties the State Employee Defendants had.  In other words, McCoy fails to articulate adequate facts to state a plausible claim, but McCoy may be able to allege additional facts could cure this defect.  Thus, the portion of Count VII

alleged against the State Employee Defendants is dismissed without prejudice.

### C.   Summary of McCoy's § 1983 Claims

McCoy's claims against DHS in Counts III, IV, V, VI, and VII are dismissed with prejudice because it is not a "person" under § 1983.  McCoy's claims against the State Defendants in Counts IV, V, and VII are dismissed without prejudice because McCoy failed to plead plausible claims. McCoy's claims against the State Employee Defendants in Count VI are dismissed with prejudice because such a theory cannot be used to establish personal liability under § 1983.  McCoy's claims against the State Employee Defendants, except Jyring, in Count III are dismissed without prejudice.  McCoy's claim against Jyring in Count III pleads a plausible claim.

## IV.  State Law Claims

McCoy alleges the State Defendants were negligent when they failed to investigate the domestic abuse allegations and the location of A.A.'s father.  See Second Amended Complaint at ¶¶ 34, 97.  McCoy also alleges an IIED/NIED claim against the State Defendants.  See id. ¶¶ at 106—09.  The State Defendants seek dismissal on the ground that the State Employee Defendants have immunity against state law tort claims.  [Mem. in Supp. of Motion at 16.]  McCoy attempts to rebut the State Defendants' argument by asserting state law is preempted by federal law.

See Mem. in Opp. at 22—23.  Because DHS has sovereign immunity, the Court only addresses the state law tort claims (*i.e.*, Counts I and II) against the State Employee Defendants.

"Hawaii state law provides immunity to state social workers investigating child abuse cases for acts performed within the scope of their duties." Haldeman v. Golden, 359 F. App'x 777, 780 (9th Cir. 2009) (citing Haw. Rev. Stat. § 350-3(b)).  Haw. Rev. Stat. § 350-3(b) provides that "[a]ny individual who assumes a duty or responsibility pursuant to [Haw. Rev. Stat.] 350-2 or chapter 587A shall have immunity from civil liability for acts or omissions performed within the scope of the individual's duty or responsibility."  Haw. Rev. Stat. Chapter 587A, the Child Protective Act, "makes provisions for the service, treatment, and permanent plans for [children who have been harmed or are in life circumstances that threaten harm] and their families."  Haw. Rev. Stat. § 587A-2.

McCoy alleges the State Employee Defendants' conduct occurred within the course and scope of their duties as social workers.  See Second Amended Complaint at ¶¶ 4, 6, 8.  McCoy's allegations are based on actions and omissions by the State Employee Defendants while they were performing their duties "pursuant to section 350-2 or chapter 587." See Haw. Rev. Stat. § 350-3(b).  Thus, the State Employee Defendants are immune from the asserted state law tort claims.  See Williamson v. Basco,

Civil No. 06-00012 JMS/LEK, 2007 WL 4570496, at *6 (D. Hawai`i

Dec. 31, 2007) (stating social worker was immune from a state-

law IIED claim under Haw. Rev. Stat. § 350-3).[10]  To the extent

that portions of McCoy's claims against the State Employee

Defendants in Counts I and II are based on conduct they

performed within the scope of their duties, those portions of

Counts I and II are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the State Defendants'

Motion to Dismiss the Second Amended Complaint for Damages,

filed on May 10, 2021, is HEREBY GRANTED IN PART AND DENIED IN

PART.  The Motion is GRANTED insofar as: Counts I, II, III, IV,

V, VI, and VII are DISMISSED WITH PREJUDICE as to DHS; Counts I,

II, and VI are DISMISSED WITH PREJUDICE as to the State Employee

Defendants; Count III is DISMISSED as to Kakehi and Nakanelua;

and Counts IV, V, and VIII are DISMISSED as to the State

Employee Defendants.  The Motion is DENIED as to McCoy's claim

against Jyring in Count III; and insofar as the dismissal of

McCoy's claims against Kakehi and Nakanelua in Count III and the

---

[10] Although McCoy asserts that state law is preempted by
federal law, see Mem. in Opp. at 22—23, he fails to articulate
why or how federal preemption applies in this instance.
Regardless, the Court is not aware of any federal statute or
controlling case law supporting McCoy's position that an IIED
claim under Hawai`i law is preempted by federal law in similar
cases.

34

dismissal of his claims against the State Employee Defendants in Counts IV, V, and VII are WITHOUT PREJUDICE.

If McCoy chooses to do so, he may file a third amended complaint by **December 10, 2021.**  The third amended complaint must include all of the factual allegations that McCoy's claims are based upon, even if McCoy previously presented those allegations in the original Complaint, the First Amended Complaint, or the Second Amended Complaint.  The third amended complaint cannot incorporate any portion of the original Complaint, the First Amended Complaint, or the Second Amended Complaint by merely referring to it.  The third amended complaint may contain new allegations addressing the deficiencies in: Count III as to Kakehi and Nakanelua; and Counts IV, V, and VII as to the State Employee Defendants.  No new claims, allegations, or parties may be included.  Should a next friend or guardian ad litem be appointed for A.A., then A.A. may be added as a plaintiff to the third amended complaint. If McCoy elects not to file a third amended complaint by the deadline, this case will proceed as to the remaining claims in the Second Amended Complaint.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 29, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

ARCHIE JOHN MCCOY, ET AL. VS. STATE OF HAWAII DEPARTMENT OF
HUMAN SERVICES, ET AL; CV 21-00063 LEK-RT; ORDER GRANTING STATE
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT FOR DAMAGES